IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| L.J.W., : | |
| : | |
| Plaintiff, : | |
| : | Case No. 4:24-CV-10-AGH |
| v. : | |
| : | |
| COMMISSIONER OF SOCIAL : | |
| SECURITY, : | |
| : | |
| Defendant. : | |

# ORDER

The Social Security Commissioner, by adoption of the Administrative Law Judge's ("ALJ's") determination, denied Plaintiff's application for disability insurance benefits and supplemental security income, finding he is not disabled within the meaning of the Social Security Act and accompanying regulations. Plaintiff contends the Commissioner's decision was in error and seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). All administrative remedies have been exhausted. Both parties filed their written consents for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3). For the reasons explained below, the Commissioner's decision is affirmed.

**LEGAL STANDARDS**

**I.    Standard of Review**

The Court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996, 1000 (11th Cir. 1987) (per curiam). "Substantial evidence is something more than a mere scintilla, but less than a preponderance.  If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam) (internal quotation marks omitted).  The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The Court may neither decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).  It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980) (per curiam).[2] The Court must scrutinize the record as a whole to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.*

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991).  It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *see also Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decision of the former Fifth Circuit rendered prior to October 1, 1981.

## II. Plaintiff's Burden

The claimant bears the initial burden of proving he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam). The claimant's "burden is a heavy one, so stringent that it has been described as bordering on the unrealistic." *Oldham v. Schweiker*, 660 F.2d 1078, 1083 (5th Cir. 1981). A claimant seeking Social Security disability benefits or supplemental security income must demonstrate they suffer from an impairment that prevents them from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments or supplemental security income, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. §§ 404.1 *et seq.*, 416.101 *et seq.*

## III. Disability Standard

Under the regulations, the Commissioner uses a five-step procedure to determine if a claimant is disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(1). First, the Commissioner determines whether the claimant is working. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is "working and the work [the claimant is] doing is substantial gainful activity," the Commissioner will find that the claimant is not disabled. *Id.* §§ 404.1520(b), 416.920(b). Second, the Commissioner determines the severity of the claimant's impairment or combination of impairments. *Id.* §§

404.1520(a)(4)(ii), 416.920(a)(4)(ii). A claimant must have a "severe impairment" which is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). Third, the Commissioner determines whether the claimant's severe impairment(s) meets or equals an impairment listed in Appendix 1 to subpart P of Part 404 of the regulations (the "Listing"). *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Fourth, the Commissioner determines whether the claimant's residual functional capacity ("RFC") can meet the physical and mental demands of past work. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth and finally, the Commissioner determines whether the claimant's RFC, age, education, and past work experience prevent the performance of any other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In arriving at a decision, the Commissioner must consider the combined effects of all of the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Id.* §§ 404.1523(c), 416.923(c). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 806 (11th Cir. 2013) (per curiam).

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for disability insurance benefits and supplemental security income on July 15, 2021. Tr. 17, 187. In both applications, Plaintiff alleged he became disabled to work on April 13, 2020. Tr. 17, 189, 193. His claims were denied initially on February 16, 2022, and upon reconsideration on June 10, 2022. Tr. 118-37. He timely requested an evidentiary hearing before an ALJ on June 29, 2022, and one

was held on June 7, 2023. Tr. 17, 38-62, 138-39. Plaintiff appeared telephonically with his attorney and testified, as did an impartial vocational expert ("VE"). Tr. 17. On August 21, 2023, the ALJ issued an unfavorable decision denying Plaintiff's applications. Tr. 14-37. Plaintiff next sought review by the Appeals Council but was denied on November 16, 2023. Tr. 1-6. Having exhausted the administrative remedies available to him under the Social Security Act, Plaintiff seeks judicial review of the Commissioner's final decision denying his applications. His case is ripe for review. 42 U.S.C. §§ 405(g), 1373(c)(3).

## STATEMENT OF FACTS AND EVIDENCE

On the date he alleges he became disabled to work, Plaintiff was forty-one years old, which is defined as a younger individual. Tr. 31; 20 C.F.R. §§ 404.1563(c), 416.963(c). He has at least a high school education and past relevant work as a kitchen helper, pizza baker, and yard laborer landscaper. Tr. 30-31, 43, 56-57. In conducting the five-step sequential analysis of his claims for disability, the ALJ found, at step two, that Plaintiff had the following severe impairments: schizophrenia, bipolar disorder, borderline intellectual functioning, and post-traumatic stress disorder ("PTSD"). Finding 3, Tr. 20. At step three, the ALJ determined these impairments, considered both alone and in combination with one another, neither meet nor medically equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1. Finding 4, Tr. 20-23. Between steps three and four, the ALJ found Plaintiff to have the RFC to perform work with no exertional limitations, which implicitly included medium, light, and sedentary work. Finding 5,

Tr. 23. The ALJ also found Plaintiff to have no postural limitations except for no climbing of ropes and scaffolds. *Id.* Further, the ALJ determined Plaintiff "retain[ed] the capacity to understand, remember and carry-out simple instructions and perform simple routine and repetitive tasks as consistent with unskilled work." The ALJ limited Plaintiff to work with no mandated production quota, no in-person contact with the public except incidental and telephonic contact, and only occasional contact with co-workers and supervisors. *Id.* At step four, the ALJ found this RFC did not inhibit Plaintiff from resuming his past relevant work as a yard laborer landscaper. Finding 6, Tr. 30. In the alternative, as a step-five finding, the ALJ elicited testimony from the VE that there are jobs existing in significant numbers in the national economy that Plaintiff can perform based on his age, education, work experience, and RFC, including hospital cleaner, industrial cleaner, marker, and house-keeping cleaner. Finding 6, Tr. 31-32, 59. The ALJ, therefore, found Plaintiff to be not disabled to work. Finding 7, Tr. 32.

## DISCUSSION

Plaintiff raises a single enumeration of error. He contends the ALJ's treatment of the opinion of Benjamin Roy, M.D., Plaintiff's treating psychiatrist, is not supported by substantial evidence. Pl.'s Br. 1, ECF No. 11. On January 4, 2022, Dr. Roy completed a circle-the-box form opining Plaintiff had moderate limitations in the ability to ask simple questions or request assistance; the degree of deterioration in personal habits; the ability to sustain a routine without special supervision; and the ability to be aware of normal hazards and take appropriate precautions. Tr. 377-79.

6

He opined Plaintiff had marked limitations in his ability to interact appropriately with the general public; the ability to get along with co-workers; the degree of his constriction of interests; the degree of restriction of his daily activities; the ability to understand, remember, and carry out simple instructions; the ability to understand, remember, and carry out complex instructions; the ability to understand, remember, and carry out repetitive tasks; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to make simple work-related decisions; the ability to respond appropriately to supervision; the ability to respond appropriately to changes in the work setting; and the ability to respond to customary work pressures. Tr. 377-378. Under the comments section, Dr. Roy wrote "suicidal/homicidal" without elaboration. Tr. 379. The ALJ found Dr. Roy's "opinion not persuasive with regard to the alleged marked limitations." Tr. 29. Plaintiff contends this was error.

Pursuant to revised regulations—applicable to claims filed on or after March 27, 2017—an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ will, instead, consider all medical opinions through the following factors: (1) supportability; (2) consistency; (3)

7

relationship with the claimant, including length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors. *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). Supportability and consistency are the most important factors the Commissioner considers when determining how persuasive to find a medical opinion or prior administrative medical finding, and, therefore, an ALJ will explain how these two factors were considered in his or her decision. *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2). The ALJ may, but is not required to, explain how the remaining factors were considered. *Id.* Here, it is clear the ALJ properly followed these regulations in considering Dr. Roy's opinion, and her decision is supported by substantial evidence.

The ALJ found Dr. Roy's opinion as to Plaintiff's marked limitations not persuasive because "findings on mental status examinations, mental health treatment notes, his positive response to mental health treatment, as well as his high level of daily functioning, are persuasive in showing the claimant's ability to attain and maintain gainful employment was not significantly impaired." Tr. 29. The ALJ's conclusion was backed by a careful and thorough discussion and citation to the record. She explained how Dr. Roy's marked limitation findings were not supported by his own records, which showed Plaintiff's improvement while on medication and eventual stabilization of his symptoms with Invega injections every three months and without the need for any other medication. Tr. 25-26, 30, 407. She noted that on May 4, 2022, Plaintiff reported elimination of his auditory hallucinations and that on August 26,

8

2022, Dr. Roy described Plaintiff's condition as stable. Tr. 26, 30, 407. The ALJ remarked that during office visits, Plaintiff was observed to have a neat appearance, to be cooperative and coherent; to have fluent speech without dysarthria or dysphonia; and to have a euthymic mood with denial of suicidal and homicidal ideation, hopelessness, helplessness, worthlessness, thought insertion, thought broadcasting, thought blocking, or thought derailment, and denial of auditory or visual hallucinations. Tr. 25-26, 360, 399. Even after Plaintiff missed two injections in October and November 2021 and reported a return of his hallucinations at his December 2021 visit, the ALJ quoted Plaintiff's statement that "I don't let them get to me." Tr. 25, 399.

The ALJ also discussed Plaintiff's own testimony during the hearing wherein he admitted stabilization of his symptoms with the injections. Tr. 26, 30. When specifically asked by the ALJ whether he felt the injections kept him stable, Plaintiff responded unequivocally, "Yes, ma'am, they do." Tr. 43-44. Then, when asked by his attorney whether he "still ha[d] any symptoms from a psychiatric standpoint," Plaintiff again responded unequivocally, "No. No, I be on the shot. So, I'm—I don't be having those symptoms and stuff no more." Tr. 49. Plaintiff's attorney also asked Plaintiff to describe his mood and energy level on a typical day when he had an injection, and Plaintiff stated, "It be all right." Tr. 49-50.

The ALJ further outlined how Dr. Roy's limitation findings were inconsistent with Plaintiff's "high functioning of activities of daily living." Tr. 30. The ALJ cited Plaintiff's statements to consultative examiners about his independence in personal

9

care and ability to cook, clean, drive, and shop for groceries independently. Tr. 26-27, 30, 366, 370. Similarly, the ALJ pointed to Plaintiff's hearing testimony where he described his ability to play basketball once a month with a friend, drive, clean, and watch television ten hours a day. Tr. 21, 30, 44-47. Plaintiff criticizes this aspect of the ALJ's decision, contending she "ignore[d] many of the qualifications offered by [Plaintiff] when describing his daily activities." Pl.'s Br. 14. It is true that upon questioning by his attorney, Plaintiff offered certain qualifications to his daily activities, such as stating he did chores when asked or reminded, and that his sister at times told him to go take a shower. Tr. 50-52. Plaintiff explained needing to be reminded because he was "like a zombie sometimes," leading his attorney to ask if this was due to receiving injections. Tr. 52. Plaintiff responded that it "probably" was from the injections and that they left him "being like a zombie" "the whole three months"—which contrasted to his earlier testimony that his mood and energy levels were "all right" following injections. Tr. 49-50, 52-53. Further, regarding Plaintiff's television watching, Plaintiff's attorney prompted him by asking, "And are you able to keep up with what you're watching or is the TV watching you," to which Plaintiff responded, "TV be watching me." Tr. 53. Despite this, and despite his claim of being zombie-like "mostly all day," Plaintiff nevertheless testified that of the ten hours of television he watched per day, he was still able to focus on five, a fact that the ALJ cited in her decision. Tr. 30, 51, 53.

Plaintiff suggests that the above-listed qualifications contradict the ALJ's rationale for rejecting the limitations found by Dr. Roy and render it unsupported by

substantial evidence. Pl's Br. 14-15. The Court disagrees. The ALJ accurately cited Plaintiff's testimony as to his ability to engage in activities of daily living, and while Plaintiff also offered certain qualifications, the weighing of how much credit to give that testimony was for the ALJ, not the Court. *See Moore*, 405 F.3d at 1211 (noting a court's limited review of a Commissioner's decision "precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence"). Further, as noted above, the evidence of Plaintiff's activities of daily living was not limited solely to his hearing testimony, but included statements to consultative examiners. Tr. 366, 370.

In addition to Dr. Roy's own records and Plaintiffs activities of daily living, the ALJ also relied on the record as a whole to reject Dr. Roy's marked limitations. The ALJ cited Plaintiff's lack of inpatient mental health treatment or intensive outpatient therapy. Tr. 29-30. The ALJ also cited the findings of Dorn Majure, a psychologist who conducted a consultative examination of Plaintiff on December 8, 2021, and concluded Plaintiff was only "mildly to moderately impaired in his ability to understand, remember, and carry out instructions and to respond appropriately to supervision, co-workers, and work pressures in a work setting." Tr. 28, 367. The ALJ further cited the finding of state agency consultants who disagreed with Dr. Roy's limitations and opined that while Plaintiff "would benefit from regular breaks and a slowed pace," he would "still be able to maintain a work pace consistent for mental demands of competitive level work." Tr. 27-28, 71-72, 92. Plaintiff does not argue the ALJ was not entitled to rely on this evidence in rejecting Dr. Roy's limitation

findings or in determining Plaintiff's RFC.

The Court will briefly address a couple of Plaintiff's other criticisms. Plaintiff contends the ALJ's rationale "ignores the fact that Dr. Roy's treatment notes regularly indicate that [Plaintiff] demonstrated poor insight and judgment." Pl.'s Br. 15. This contention, however, is belied by a plain reading of the ALJ's decision wherein she specifically noted Dr. Roy's findings of "poor insight and judgment." Tr. 21, 25-26. Moreover, Plaintiff does not explain why a finding of poor insight and judgment would render Plaintiff unable to perform the jobs identified by the VE.

Plaintiff also argues Dr. Roy's opinion "is supported by both his treatment notes and [Plaintiff's] description of his daily living activities." Pl.'s Br. 15. But the issue is whether the ALJ's decision—including her rejection of Dr. Roy's limitations—is supported by substantial evidence, not whether there is substantial evidence in the record that could support Dr. Roy's opinion.[3] *See Vergara v. Comm'r of Soc. Sec.*, No. 22-11671, 2023 WL 5814433, at *3 (11th Cir. Sept. 8, 2023) ("[T]he question before us on appeal is limited to whether the ALJ's decision—not Dr. Jorge's opinion—is supported by substantial evidence. That Dr. Jorge's opinion might be consistent with

---

[3] Plaintiff relies heavily on *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021) and *Richey v. Social Security Administration, Commissioner*, No. 22-11595, 2023 WL 4013525 (11th Cir. June 15, 2023) to argue the ALJ's decision to reject the opinion of a treating physician was not supported by substantial evidence. Pl.'s Br. 13-14. These cases, however, were decided under the pre-revision guidelines requiring an ALJ to give controlling weight to a treating physician's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, they are inapplicable to Plaintiff's case. *See Vergara v. Comm'r of Soc. Sec.*, No. 22-11671, 2023 WL 5814433, at *3 (11th Cir. Sept. 8, 2023) (rejecting the plaintiff's reliance on *Simon* and similar cases, noting that "most important, each of these decisions involved applications for disability benefits filed before 27 March 2017 and, thus, considered opinion evidence under the treating-physician old rule").

some record evidence is not enough to overturn the ALJ's decision."). Here, the Court finds the ALJ properly considered Dr. Roy's opinion pursuant to the regulations, and her decision is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the determination of the Social Security Commissioner is affirmed.

**SO ORDERED**, this 10th day of September, 2024.

s/ *Amelia G. Helmick*  
UNITED STATES MAGISTRATE JUDGE